UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

          v.

ERRON NURSE,

             Defendant.

**DECISION AND ORDER**

6:24-CR-06054 EAW

---

Pending before the Court are objections (Dkt. 73) filed by defendant Erron Nurse ("Defendant") to a Report and Recommendation entered by United States Magistrate Judge Mark W. Pedersen on June 10, 2025, recommending that the undersigned deny Defendant's motions to suppress evidence from the search of 269 Breck Street and from Defendant's cellular telephone[1] (Dkt. 65 (the "R&R")).  For the reasons set forth below, the objections are overruled, the R&R is adopted, and Defendant's motion to suppress the aforementioned evidence (Dkt. 46) is denied.

## BACKGROUND

Defendant is charged by way of indictment with nine counts relating to drug trafficking and possession of firearms, including possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (count 1); possession of N,N-Dimethylpentylone with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (count 2); possession of cocaine and N,N-Dimethylpentylone with intent to

---

[1]    This Court referred all pretrial matters in the case to Magistrate Judge Pedersen pursuant to 28 U.S.C. § 636(b)(1)(A)-(B).  (Dkt. 26).

distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (count 3); possession of N,N-Dimethylpentylone, methamphetamine, and cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (count 4); possession of fentanyl with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (count 5); use of a premises to manufacture, distribute, and use a controlled substance, in violation of 21 U.S.C. § 856(a)(1) (count 6); possession of methamphetamine, in violation of 21 U.S.C. § 844(a) (count 7); possession of firearms in furtherance of drug trafficking crimes, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (count 8); and felon in possession of firearms, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(8) (count 9).  (Dkt. 24).

The R&R addresses a motion to suppress evidence[2] filed by Defendant on September 20, 2024.  (Dkt. 46).  The government opposed the motion to suppress on October 4, 2024.  (Dkt. 47).  Thereafter, Defendant and the government submitted supplemental briefing addressing specific questions posed by the Magistrate Judge.  (Dkt.

---

[2]    Defendant filed his motion to suppress evidence from 269 Breck Street and his cellular telephone as part of an omnibus motion, which also included a motion to suppress statements, a motion for disclosure, non-dispositive discovery-related motions (including a motion for preservation of rough notes, for *Jencks* Act material, and pretrial notices), and a motion for leave to file further motions.  (Dkt. 46).  The R&R also recommends that the Court deny Defendant's motion to suppress statements (Dkt. 65 at 45-48), but Defendant does not raise objections to the Magistrate Judge's recommendation in this respect (*see* Dkt. 73 at 3).  On June 10, 2025, the Magistrate Judge filed an omnibus order granting Defendant's motion for leave to file additional motions, denying the motion for preservation of rough notes, and reserving on the remaining motions by indicating that those motions would ultimately be decided by the undersigned.  (Dkt. 66).  The remaining motions, which relate to production of *Jencks* Act material and pretrial notices pursuant to Rules 404(b), 608, and 609 of the Federal Rules of Evidence, are denied without prejudice with leave to renew at a later date.  The undersigned will issue a Pretrial Order once a trial date is scheduled, which will set forth various dates for submissions relating to evidentiary issues and a proposed deadline for production of *Jencks* Act material.

51; Dkt. 54; *see also* Dkt. 50).  The Magistrate Judge held an evidentiary hearing on the motion to suppress on February 20, 2025.  (Dkt. 57; Dkt. 58).  The parties filed post-hearing memoranda on May 23, 2025.  (Dkt. 63; Dkt. 64).

The Magistrate Judge issued the R&R on June 10, 2025.  (Dkt. 65).  In the R&R, the Magistrate Judge recommends that the Court deny Defendant's motions to suppress evidence seized from 269 Breck Street, deny Defendant's motion to suppress evidence obtained from his cellular telephone, and deny Defendant's motion to suppress statements. (Dkt. 65 at 22-48).

Defendant filed his objections to the R&R on July 14, 2025.  (Dkt. 73).  Defendant raises specific objections to the Magistrate Judge's recommendations that the Court (1) deny the motion to suppress evidence seized from 269 Breck Street, and (2) deny the motion to suppress evidence obtained from Defendant's cellular telephone.  (Dkt. 73 at 3, 21-37).  The government filed its response to Defendant's objections on August 15, 2025 (Dkt. 78), and Defendant filed reply papers on August 27, 2025 (Dkt. 79).  The Court held oral argument on the objections on September 9, 2025, at which time the Court reserved decision and set a deadline to receive additional submissions.  (Dkt. 80).  The government and Defendant submitted supplemental briefing on September 23, 2025.  (Dkt. 82; Dkt. 83).  The Court heard further argument on Defendant's objections on September 30, 2025, and reserved decision.  (*See* Dkt. 84).

The Magistrate Judge's R&R provides a thorough discussion of the relevant hearing testimony.  (*See* Dkt. 65 at 3-14).  The Court assumes the parties' familiarity with that summary and with the hearing testimony.  Accordingly, the Court will not provide another

recitation of the hearing testimony, but will cite to relevant testimony when necessary in its discussion of the legal issues.

## ANALYSIS

## I.    Standard of Review

A district court reviews any specific objections to a report and recommendation on a dispositive issue, such as a motion to suppress, under a *de novo* standard.  Fed. R. Crim. P. 59(b)(3); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").  To trigger the *de novo* review standard, objections to a report and recommendation "must be specific and clearly aimed at particular findings in the magistrate judge's proposal." *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009).  "When a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the report strictly for clear error.  Similarly, objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review." *United States v. Peldomo*, No. 10-CR-0069 RRM ALC, 2010 WL 5071489, at *1 (E.D.N.Y. Dec. 7, 2010) (citations, quotation, and alteration omitted).

II.    **Suppression of Evidence Seized from 269 Breck Street**

Defendant argues that the Magistrate Judge erred in his determination that delivery of the die mold[3] to 269 Breck Street gave rise to probable cause supporting the anticipatory search warrant.  (Dkt. 73 at 21).  Defendant contends the Magistrate Judge improperly dismissed Defendant's attempt to draw a distinction between delivery of the package and acceptance of the package, the latter of which would have given the person accepting the package the opportunity to review the package and confirm its intended recipient.  (*Id*.).  Defendant attempts to distinguish *United States v. Garcia*, 822 F.2d 699 (2d Cir. 1989) and its progeny, on which the Magistrate Judge relied in the R&R.  (*Id*.).

In response, the government argues that the Magistrate Judge properly found that law enforcement searched 269 Breck Street pursuant to a valid anticipatory search warrant.  (Dkt. 78 at 8).  Specifically, the government contends that the search warrant required "accepted delivery of the subject parcel" by someone at the residence, and permitted execution when law enforcement received the transmitting signal indicating that the package was opened, or within a reasonable time after delivery, and the evidence put forth at the hearing established that the agents waited a reasonable time following delivery before executing the search.  (*Id*. at 9-11).

---

[3]    As explained in the search warrant application, a "die mold" is utilized in the operation of a pill press machine, and it is responsible for the appearance of the pills in that the pill press die acts as a mold, and gives the pill a desired size and shape.  A pill press die often includes a specific imprint, which allows a user to differentiate among different types of pills.  Pill press dies are often used to create counterfeit pills that appear similar to genuine pharmaceutical pills.  (*See* Dkt. 1 at 15, ¶ 7).  Defendant does not dispute that pill press dies are contraband under the law.

"An anticipatory warrant is 'a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of [a] crime will be located at a specified place.'" *United States v. Grubbs*, 547 U.S. 90, 94 (2006) (citation omitted). "Most anticipatory warrants subject their execution to some condition precedent other than the mere passage of time—a so-called 'triggering condition.'" *Id.* Such a triggering condition is "typically the future delivery, sale, or purchase of contraband." *United States v. Rowland*, 145 F. 3d 1194, 1201 (10th Cir. 1998). However, the "triggering condition need not be set forth in the warrant itself." *United States v. Caraher*, 973 F.3d 57, 63 (2d Cir. 2020). "[I]f those events do not transpire, the warrant is void." *Garcia*, 882 F.2d at 702.

"Anticipatory warrants are . . . no different in principle from ordinary warrants." *Grubbs*, 547 U.S. at 96; *see also Garcia*, 882 F.2d at 702 (explaining that even a non-anticipatory warrant is to some extent anticipatory, since "for even a warrant based on a known presence of contraband at the premises rests also on the expectation that the contraband will remain there until the warrant is executed"). "[Anticipatory warrants] require the magistrate to determine (1) that it is *now probable* that (2) contraband, evidence of a crime, or a fugitive *will be* on the described premises (3) when the warrant is executed." *Grubbs*, 547 U.S. at 96; *see also Garcia*, 882 F.2d at 702 ("[W]hen a government official presents independent evidence indicating that delivery of contraband will, or is likely to, occur, and when the magistrate conditions the warrant on that delivery, there is sufficient probable cause to uphold the warrant."). "Thus, the fact that the contraband is not presently located at the place described in the warrant is immaterial, so long as there is probable

cause to believe that it will be there when the search warrant is executed." *Id.* (quotations and citation omitted).

The Supreme Court and the Second Circuit have rejected challenges to anticipatory search warrants as unconstitutional *per se*.  *Id.* at 703 ("Anticipatory warrants are not unconstitutional *per se,* and in the proper circumstances, may be an effective tool, both to fight criminal activity, and to protect individual fourth amendment rights."); *see also Grubbs*, 547 U.S. at 94-95 (rejecting argument that anticipatory search warrants contravene the Fourth's Amendments requirement that no warrants shall issue absent probable cause). But the Second Circuit has cautioned that "government agents may [not] use these warrants without limitation," and "judges should therefore take care to require independent evidence giving rise to probable cause that the contraband will be located at the premises at the time of the search."  *Garcia*, 882 F.2d 703.

On December 13, 2022, Homeland Security Investigations ("HSI") Special Agent Amy A. Golata submitted an affidavit in support of an anticipatory search warrant for 269 Breck Street, Rochester, New York.  (Dkt. 1 at 12-43)[4].  The search warrant application identifies the basis for the search; namely, to search for: evidence of a crime; contraband, fruits of a crime, or other items illegally possessed; and property designed for the use, intended for use, or used in committing a crime.  (*Id.* at 12).  The search warrant application also identifies the specific violations of the law to which this evidence would relate— specifically, violations of 21 U.S.C. §§ 841(a)(1) and 863(a)(3) (unlawful manufacture or

---

[4]        The search warrant is attached as Exhibit 1 to the criminal complaint.

possession with intent to distribute a controlled substance, and unlawful importation of drug paraphernalia). (*Id*.).

In support of the probable cause determination in the search warrant, SA Golata explained that there was probable cause to believe that on or about December 15, 2022, there would be concealed at 269 Breck Street, a United States Postal Service Mail Parcel containing a die mold, which is illegal under federal law. (*Id*. at 14, ¶ 4). Specifically, SA Golata explained that on December 6, 2022, U.S. Customs and Border Protection ("CBP") seized a parcel addressed to Defendant at 269 Breck Street, which contained one pill press die set, bearing Winnie-the-Pooh imprints. (*Id*. at 16, ¶ 9). SA Golata further explained that HSI or CBP had previously intercepted similar parcels containing pill press die molds addressed to Defendant at 269 Breck Street, including: (1) on September 15, 2022, a parcel containing a three-piece pill press die stamp set, bearing SpongeBob SquarePants imprints as markings on the pill press die; (2) in June 2021, a parcel containing pill press dies bearing markings of a bull imprint on both sides; (3) in April 2019, a parcel containing a pill press die stamp set, bearing the markings of the "Gucci" designer name and logo. (*Id*. at 16-17, ¶¶ 10-12; *see also* Dkt. 58 at 71-72 (SA Golata explaining that during the course of the investigation, four packages containing die molds were intercepted)). The search warrant application further details that a review of a shipment list from LFA Machines DFW, LLC, which is known by law enforcement to distribute pill press manufacturing and pill binding substances, revealed that packages containing both pill press manufacturing equipment and pill binding substances were previously ordered by Defendant at 269 Breck Street, at phone numbers (585) 300-1716 and (585) 512-4477, and at email address

Erronnurse@gmail.com, including on September 1, 2018, March 3, 2018, and April 26, 2021.  (Dkt. 1 at 18-19, ¶¶ 14-15, 17).

SA Golata explained that such die molds and pill press equipment are used in the illegal manufacture and sale of narcotics, including MDMA/ecstasy pills.  (*Id*. at 17-18, ¶ 13; *see also id*. at 21, ¶ 19).  Accordingly, as a result of these several prior deliveries of contraband, including pill die molds, pill press equipment, and pill binding substances, SA Golata maintained that she had probable cause to believe that the parcel addressed to Defendant at 269 Breck Street, which contained one pill press die set, bearing Winnie-the-Pooh imprints, would be delivered and taken into the residence at 269 Breck Street, where law enforcement would find evidence of drug trafficking crimes.  (*Id*. at 29, ¶ 32).

Although it was not required to include such a condition, *see Caraher*, 973 F.3d at 63, the search warrant application signed by the Magistrate Judge included the following triggering condition, which was required to occur prior to law enforcement's execution of the search warrant:

> It is your affiant's intent to execute the search warrant either at the time law enforcement receives the signal from the transmitter indicating that the subject parcel has been opened, or within a reasonable time after the parcel enters the subject premises or is taken by someone who just left subject premises.  If the subject parcel is not accepted or [is] otherwise affirmatively rejected, the investigative team will not execute the search warrant.

(Dkt. 1 at 22, ¶ 22).

At the suppression hearing, SA Golata explained that the transmitter placed in the parcel did not indicate that the package had been opened, and therefore the warrant was executed "within a reasonable time" after the parcel entered the residence, as required by

the warrant. Specifically, SA Golata explained that she consulted with her supervisor and other team members and they determined that 49 minutes—which was the time that passed between the delivery of the parcel and the execution of the search warrant—was a reasonable time to execute the warrant, including based on that the fact that an unknown individual had entered the 269 Breck Street residence after the parcel was delivered, and because it was cold and therefore the package could have been secreted out of the residence under a jacket. (Dkt. 58 at 53-54).

Having conducted a *de novo* review of the motion to suppress the anticipatory search warrant for 269 Breck Street, the Court finds no reason to modify the R&R on this issue. The search warrant application was plainly supported by probable cause, including that several packages containing contraband—namely, pill press parts and die molds—were previously addressed to Defendant at 269 Breck Street, and therefore once the package was delivered on December 15, 2022, there was a fair probability that contraband or evidence of a crime would be found at 269 Breck Street. *See, e.g., United States v. Rey*, 923 F.2d 1217, 1220 (6th Cir. 1991) (anticipatory search warrant supported by probable cause where affiant testified that "the mail carrier for the apartment claimed a number of 'these types of packages' had been delivered to the same location in the past," and therefore concluding that "there were indications of prior illicit activity"); *see also United States v. McKenzie*, 13 F.4th 223, 237 (2d Cir. 2021) (probable cause existed to search jeep, where warrant application detailed that officers observed in plain view in the jeep cardboard boxes similar to boxes which they knew to contain marijuana, and explaining that "[t]he fact that boxes

similar to the ones Riggins delivered to Unit 296 were in plain sight inside the Jeep supports a finding of probable cause under these circumstances").

Defendant does not dispute that die molds are contraband under 28 U.S.C. § 863(e), nor does he dispute that these previous shipments were addressed to Defendant at 269 Breck Street. Rather, Defendant maintains that the package was required to be "accepted" into the residence by Defendant (as opposed to delivered). (Dkt. 73 at 24). He maintains that there is an "enormous difference between a delivery that is made as part of a controlled transaction involving a phone call arranging for the delivery of drugs, compared with the facts of this case, involving the delivery of a postal package to an individual who is clearly not the person referenced in the search warrant application and is not given time to review the package[']s labeling before the undercover has turned to leave the porch." (*Id*. at 23).

The Court does not find this argument persuasive. The warrant application specifies that there is probable cause to search the premises "upon the accepted delivery of the subject parcel to an individual at the subject premises" (Dkt. 1 at 29, ¶ 32)—which is precisely what happened here. Defendant appears to read into the warrant application a requirement that the undercover postal inspector deliver the parcel to Defendant directly, provide the person accepting the package time to review the labeling, and/or otherwise convey something in particular to the individual accepting the package, but no such requirement exists in the warrant, nor does *Garcia* or its progeny mandate that the warrant include such a requirement. In fact, Defendant's argument that the anticipatory warrant required that he personally receive the package was rejected by the Second Circuit in

*Garcia*, where the defendant similarly argued that agents executed an anticipatory search warrant prematurely, before the defendant himself took possession of the cocaine:

> Under its own terms, the warrant became valid "upon the delivery of cocaine by [Hooks] and [Oliver]." Nowhere did the warrant require that Wilson-Grant or any one else take possession of the cocaine, nor was there even any requirement that Hooks and Oliver give up possession. Rather, the warrant listed an address that could be searched by government agents as soon as the cocaine was delivered there. Wilson-Grant had agreed to this delivery, and, in fact, was found in the bedroom shortly after the agents entered the apartment. In light of these facts, we have no trouble concluding that when Hooks and Oliver entered the apartment and placed the duffel bags on the floor, there was a "sufficient delivery" to the premises to fulfill the condition of the warrant, thus allowing the agents to search.

*Garcia*, 882 F.2d at 704; *see also United States v. Coffey*, No. 21-cr-00538 (JMA) (ARL), 2023 WL 8891508, at *9 (E.D.N.Y. Dec. 26, 2023) (rejecting the defendant's argument that the delivery of the package to his grandmother, who was a non-suspect, cut against the judge's probable cause determination, explaining that whether the defendant's grandmother was a suspect at the time of the delivery was "irrelevant," and rather, "[t]he expressly delineated triggering condition authorized by Judge Shields hinged on delivery to 'an individual at the SUBJECT PREMISES'—not a particular suspect," and noting that "[p]ut differently, Coffey argues against a probable cause determination based on factors not required by the Supreme Court in Grubbs").

As explained above, the parcel was delivered to an individual at 269 Breck Street and taken into the residence, which is what was required by the warrant application. The Court has reviewed the video footage of the delivery, which depicts the undercover postal inspector handing the package to a black female in the residence, with the black female responding, "thank you." Notably, the black female who received the package at 269 Breck

Street did not refuse the package, express any dismay about accepting the package, place the parcel back outside the residence at any time, or take any other action which could be viewed as a rejection of the package. Rather, the parcel remained inside 269 Breck Street until a reasonable time passed, at which time law enforcement executed the search warrant. Accordingly, the Court finds no basis to reject the R&R on this issue.

Defendant also argues that the triggering conditions contained in the warrant application were not met, suggesting that it was not reasonable for law enforcement to execute the warrant after only 49 minutes had passed, since there was no danger posed by the package itself, the contents of the package had been reviewed, there were no explosives or weapons in the package, and no controlled substances or chemicals in the package, nor did law enforcement have information that Defendant was present at the residence at the time of delivery. (*See* Dkt. 73 at 18, 25-26). Defendant cites to no authority supporting his position that a reasonable time had not passed under the circumstances. As explained above, SA Golata testified to her determination of what constituted a reasonable time after the delivery of the package, which was based on her training and experience, the fact that another individual had entered 269 Breck Street, and the weather on December 15, 2022— namely, that it was cold and the package, which was small, could have been easily concealed and carried out of the residence. *See, e.g., United States v. Watson*, No. 23-CR-82(EK), 2023 WL 7300618, at *4 (E.D.N.Y. Nov. 6, 2023) (discussing courts' reliance on an agent's training and experience in connection with probable cause finding). While Defendant argues that the package was not "dangerous," he does not dispute that the package contained contraband. And the warrant application itself did not require that law

enforcement wait until there was a dangerous situation, or that Defendant was present, before executing the warrant.

Accordingly, the Court finds no error in the Magistrate Judge's recommendation that the Court deny Defendant's motion to suppress the evidence obtained from 269 Breck Street, and the Court adopts the R&R in this respect. Defendant's motion to suppress evidence seized from 269 Breck Street is denied.

## III.  <u>Suppression of Evidence Seized from Defendant's Cellular Telephone</u>

Defendant next argues that the Magistrate Judge erred in his determination that the search of Defendant's cellular telephone should not be suppressed. (Dkt. 73 at 26). Specifically, Defendant contends that the face of the warrant does not identify electronic devices to be searched, nor does Attachment A to the warrant application reference any electronic devices, and therefore the warrant lacks particularity with respect to both the electronic devices to be searched, and as to the digital data to be searched within the devices. (*Id*. at 28). Defendant further argues that if Attachment B permits not only seizure, but also permits broad authority for additional searches, including searches of unidentified electronic devices from 269 Breck Street, then law enforcement is "left with unbridled discretion to rummage at will through private digital data of unidentified devices regardless of whether the searches and investigation established the seized devices may be relevant to the investigation." (*Id*.). Defendant concludes that while a court may find probable cause to support that a location can be searched and electronic devices can be seized pending further investigation or authorization to search from the court, allowing law

enforcement immediate access to the private digital information on any device seized is unreasonable, and would constitute a general warrant.  (*Id*. at 30).

In response, the government argues that the Magistrate Judge properly found that the search warrant meets the particularity requirement, and permitted law enforcement to seize and search Defendant's Samsung cellular telephone.  (Dkt. 78 at 12).   The government contends that the search warrant for 269 Breck Street identifies the specific offenses for which law enforcement had probable cause to search as well as the specific items to be seized—including electronic devices and data contained within them relating to designated crimes—and that it was reasonable and within the scope of the warrant for law enforcement to search Defendant's cellphone for records tending to show controlled substance offenses, including records reflecting the names, addresses, and telephone numbers of associates, and relevant videos and photographs.  (*Id*. at 13-15).

The Court concludes that under the circumstances, including the numerous packages containing contraband that were addressed to Defendant and either intercepted by law enforcement or delivered to 269 Breck Street, coupled with SA Golata's statements regarding her knowledge that drug traffickers— including those trafficking in MDMA and ecstasy—utilize cellphones as a means of furthering their illicit activities, the warrant properly authorized the search of the cellular telephones found in the residence.  Further, even if there was no probable cause supporting the search of the cellphones, the Court finds that a reasonable officer was entitled to rely on the warrant application, and therefore evidence obtained from the search of Defendant's Samsung cellphone would not be

suppressed under the good faith exception recognized in *United States v. Leon*, 468 U.S. 897 (1984).

A. The Search of Defendant's Cellphone was Supported by Probable Cause, and the Warrant Meets the Particularity Requirement

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, *and particularly describing the place to be searched, and the persons or things to be seized*." U.S. Const. amend. IV (emphasis added). "The purpose of the particularity requirement . . . 'is that those searches deemed necessary should be as limited as possible,'" including the "specific evil" that is "the 'general warrant' abhorred by the colonists, and the problem is not that of intrusion *per se,* but of a general, exploratory rummaging in a person's belongings." *United States v. Buck*, 813 F.2d 588, 590 (2d Cir. 1987) (citation omitted). "The particularity requirement has three components. First, a warrant must identify the specific offense for which the police have established probable cause. Second, a warrant must describe the place to be searched. Third, the warrant must specify the 'items to be seized by their relation to designated crimes.'" *United States v. Galpin*, 720 F.3d 436, 445-46 (2d Cir. 2013) (internal citations omitted).

Defendant's argument with respect to the search of Defendant's cellphone is focused on the particularity requirement. Defendant argues that to the extent the warrant authorized the search of any cellphones at 269 Breck Street, any such warrant was a "general warrant," since the face of the warrant does not identify electronic devices to be

searched, nor does Attachment A to the warrant application reference any electronic devices. (*See* Dkt. 73 at 28 ("[T]his case presents two different areas where particularity is at issue: particularity as to the electronic device(s) that may be searched and particularity as to the digital data that may be searched within the device(s).")).

In support of this argument, Defendant cites to the Second Circuit's decisions in *Galpin* and *Garcia*, as well as *United States v. Rosa*, 626 F.3d 56 (2d Cir. 2010). (Dkt. 73 at 29-36; *see also* Dkt. 83 at 5). As to the particularity of the devices identified in the warrant application, Defendant cites to no authority standing for the proposition that the search warrant application must identify the specific electronic devices to be seized or searched. And in fact, cases from within the Second Circuit have rejected the argument that a warrant that does not identify a specific cellphone to be seized or searched should be suppressed. *See, e.g., United States v. Thomas*, No. 7:23-CR-00481-NSR-1, 2025 WL 1733273, at *4 (S.D.N.Y. June 23, 2025) (denying the defendant's motion to suppress search warrant for the "seizure and electronic search of every electronic device," where the search warrant limited the search to devices containing evidence or instrumentalities of the subject offenses, and "provided ample probable cause to support the belief that electronic devices were used as instrumentalities to facilitate the Subject Offenses and would contain evidence of the same"); *Coffey*, 2023 WL 8891508, at *11 ("Demanding that an anticipatory search warrant specifically name each electronic item to be seized would require officers possessed of incomplete knowledge to identify ex ante every item of evidence that will be relevant and the precise form that it will take—a plainly unrealistic expectation. Based on these facts, the warrant authorizing seizure of any electronic device

found in 41 Sebonac Road—regardless of its registration—was not overbroad."). Similarly, Defendant cites to no authority supporting his argument that a separate warrant is required for the search of cellphones seized from a residence, even when the judicial officer signing the warrant plainly authorized the same.

As discussed above, *Garcia* does not involve a cellphone search, but rather discusses the use of anticipatory warrants generally, and therefore it is of limited utility in analyzing the specific legal issue raised by Defendant. *Galpin* does address the seizure and search of electronic data, and explains that when the property to be searched is a computer hard drive, "the particularity requirement assumes even greater importance." 720 F.3d at 446. In *Galpin*, law enforcement applied for a warrant to search the defendant's residence, person, and vehicles, for cameras, computers, cell phones, and any computing or data processing software for evidence of sexual exploitation of minors. *Id*. at 440-41. The court issued a warrant (which did not incorporate the investigator's application describing the investigation into the defendant) for the search of the defendant's residence, vehicle, and person, for property "believed to contain evidence that will constitute, substantiate or support violations of NYS Corrections Law, section 168-f subdivision four, NYS Penal Law and or Federal Statutes," and it also authorized the seizure and subsequent search of various types of computing equipment. *Id*. Among the items discovered were a computer and digital photography equipment containing images of child pornography. *Id*. at 441.

The defendant argued that investigators lacked probable cause to believe that he had committed an offense beyond failing to register an internet identifier, and thus there was no basis for conducting a broad search of the information contained on his computer and

camera equipment. *Id*. at 442. The Second Circuit affirmed the district court's conclusion that the warrant was facially overbroad, based on the fact that the only crime specified in the warrant was a registration offense, and therefore there was no probable cause to believe that the defendant possessed or produced child pornography, since neither of those crimes were mentioned in either the warrant application or in the warrant itself, which nonetheless authorized a search for images depicting child sexual activity. *Id*. at 448.

In *Rosa*, as part of a child exploitation investigation, law enforcement executed a search warrant permitting a search of the defendant's residence, and the seizure and search of various items, including computer equipment and other electronic digital media that "would tend to identify criminal conduct." 626 F.3d at 58. The search warrant did not incorporate any supporting documents, or set forth the nature of the suspected criminal activity. *Id*. at 58-59. The defendant argued that because the warrant failed to state the specific criminal activity alleged, or the type of digital evidence to be sought from the electronic items seized, "the warrant authorized the officers to conduct an unfettered search of the contents of his numerous electronic devices, any one of which might contain sensitive personal information unrelated to the suspected crimes of child pornography and child molestation." 626 F.3d 56 at 61. The Second Circuit agreed:

> [T]he search warrant in this case lacked the requisite specificity to allow for a tailored search of his electronic media. The warrant was defective in failing to link the items to be searched and seized to the suspected criminal activity—i.e., any and all electronic equipment potentially used in connection with the production or storage of child pornography and any and all digital files and images relating to child pornography contained therein— and thereby lacked meaningful parameters on an otherwise limitless search of Rosa's electronic media.

*Id*. at 62.

Unlike the search warrant applications discussed in *Galpin* and *Rosa*, the warrant application here—in both the search warrant itself and in SA Golata's affidavit—cites to specific violations of federal law; namely, violations of 21 U.S.C. §§ 841(a)(1) and 863(a)(3) (unlawful manufacture or possession with intent to distribute a controlled substance, and unlawful importation of drug paraphernalia). (*See* Dkt. 1 at 12, 29 at ¶ 32). Likewise, Attachment B to the search warrant application, which lists the electronic devices, states that agents may seize and search cellular telephones, and other communication devices indicating evidence of drug trafficking, including contact information, call log information, photographs and video files, text messages, calendar entries, and browser histories. (*Id*. at 32). In other words, the warrant application limits and describes the type of evidence to be searched.

Finally—and perhaps most significantly—the search warrant application includes information sufficiently connecting Defendant's receipt of contraband with the electronic devices specified in the warrant. As explained above, the search warrant application details the numerous deliveries of contraband, including pill press parts and die molds, addressed to Defendant at 269 Breck Street, and the warrant application further explains that such materials are commonly used in the manufacture of MDMA/ecstasy pills. (*Id*. at 16-21, ¶¶ 9-19). The warrant application also sets forth evidence that Defendant placed orders for the pill press parts and binding agents using his email address at Erronnurse@gmail.com, and by listing specific telephone numbers with those orders. And as further explained below, SA Golata explained in the warrant application that drug traffickers utilize

electronic devices and means, including email, to further their drug trafficking activities and therefore evidence of the same is maintained there.

The warrant application also details how drug traffickers maintain evidence of drug trafficking activity, including on their cellular telephones, and the types of evidence typically found on these devices.  (*Id*. at 22, ¶ 23).  The warrant application explains that SA Golata has been employed as a special agent with HSI since December 2009, during which time she has participated in investigations targeting smuggling, trafficking, and distribution of narcotics.  (*Id*. at 13, ¶ 1).  SA Golata states that she is familiar with how controlled substances are obtained, diluted, packaged, distributed, sold, and used within the framework of drug smuggling, and how drug smugglers use other person and their personal property to facilitate their illegal activities.  (*Id*. at 13-14, ¶ 2; *see also* Dkt. 58 at 18 (SA Golata's hearing testimony that she had been involved in pill press investigations, either as a case agent or in a supporting role as an investigator, at least 30 times)).

SA Golata explains in the warrant affidavit that traffickers of controlled substances, including those trafficking in MDMA/ecstasy, commonly maintain records, notes, and other papers relating to drug trafficking, and that those records are maintained where the trafficker has access to them, including on their person, and "in electronic storage devices, including . . . computers, computer storage disks or drives, tablet devices, cellular telephones and other electronic devices."  (Dkt. 1 at 23, ¶ 23(c)).  The warrant application details the types of evidence maintained on cellular telephones, including addresses or telephone numbers of associates or sources of supply (*id*. at ¶ 23(d)), and photographs or videos of themselves, their associates, property, drugs, and drug proceeds (*id*. at ¶ 23(e)).

As to how drug traffickers use their personal property to further their illegal activities, the warrant application explains that traffickers of controlled substances, including MDMA/ecstasy, commonly maintain pagers, cellular telephones, and other electronic communication devices on their person and in their residences, which are used to further their drug trafficking activities, and that these devices include information such as records of recent call activity and lists of telephone information and other information, such as names. (*Id*. at ¶ 23(f) & (g)). Further, cellular telephones have voicemail and text messaging features, which permit the user to send and receive voicemail and/or text messages, as well as cameras, which permit the user to take photographs, which may be stored on the device itself. (*Id*. at ¶ 23(h) & (i)). The warrant explains that traffickers of controlled substances, including MDMA/ecstasy, commonly keep and utilize personal computers to further their drug trafficking activities, and that such use has increased dramatically during the past years. (*Id*. at ¶ 23(1)). SA Golata explains that she previously participated in investigations where computers, internet-enabled cellular "smartphones," and conventional cellular telephones were seized and searched pursuant to a search warrant, and that these devices "contained digital photographs of bulk cash and pictures of the target with smuggling and drug associates, as well as text messages referencing smuggling and drug transactions." (*Id*.). Drug traffickers, including those trafficking MDMA/ecstasy, use e-mail, social networking websites, and the internet to further their criminal activity, including to communicate with their co-conspirators, and to provide assistance with illegal purchases, possession, or manufacture and distribution of controlled substances. (*Id*. at ¶ 23(m)).

Consistent with this information, Attachment B to the warrant application, which is entitled, "SCHEDULE OF ITEMS TO BE SEIZED AND SEARCHED," includes the following items:

> Cellular telephones, personal computers, tablets, smart cellular telephones, paging devices, beepers, and other communication devices which may indicate evidence of possession with intent to distribute or distribution of a controlled substance, or participation in a conspiracy to manufacture or distribute controlled substances, including:
>
> a. Any subscriber or contact information to include names, addresses, telephone numbers, email addresses or other identifiers;
>
> b. Any call log information, including missed, incoming and outgoing calls and any information associated with those numbers;
>
> c. Any photographs, video and audio files;
>
> d. Any text messages, email messages, chats, multimedia messages, installed applications or other electronic communications;
>
> e. Any calendar, note, password, dictionary entries;
>
> f. Any internet or browser entries or history; and
>
> g. Any system, data or configuration information contained within the device.

(*Id*. at 31-32).

Based on both the information contained in the search warrant affidavit, coupled with Attachment B—which plainly indicates that the Magistrate Judge contemplated that the agents would seize and search cellphones for evidence of drug trafficking—there was probable cause supporting the search of electronic devices seized from 269 Breck Street, and the Court finds that the description of the items to be seized and searched is sufficiently particular. *See, e.g., United States v. Moore*, 968 F.2d 216, 223 (2d Cir. 1992) ("The belief

- 23 -

that drug records may be found at an address to which large packages of drugs are sent is precisely the kind of 'practical, common-sense' judgment required by *[Illinois v.] Gates*."); *United States v. Upton*, 763 F. Supp. 232, 240 (S.D. Ohio 1991) (rejecting the defendant's argument that there was no probable cause to support the authorization to search for the other articles specified in the warrant, since "based on the circumstances surrounding the packaging and sending of the contraband, there was a substantial basis for concluding that probable cause existed to search the Rumsey Road address not only for the package, but also for other evidence relating to aggravated trafficking in drugs and drugs abuse").

Defendant also contends that the agents failed to comply with an addendum attached to the warrant application, which is entitled "Addendum to Search Warrant, Search of Computers." (Dkt. 73 at 32). This addendum provides, among other things, that searches of computer or electronic media searched pursuant to the warrant must be completed within 60 days, unless for good cause shown that deadline is extended, and also that in conducting the search authorized by the warrant, the government shall make reasonable efforts to utilize computer search methodology to search only for files, documents, or other electronically sorted information which are identified in the warrant itself. (Dkt. 1 at 35).

Two cellular telephones—and LG cellular telephone and a Samsung cellular telephone—were seized during the execution of the search warrant, and at least the Samsung phone was subsequently searched. The contents of the Samsung phone, which belonged to Defendant, were reviewed by SA Golata following the execution of the search warrant at 269 Breck Street. (Dkt. 58 at 97-98). SA Golata testified that she did not work with anyone to review the contents of the cellphone, other than the forensic agency that

performed the data extraction for her, and she could not recall any limitations placed on her as to what would be extracted from the cellphone. (*Id*. at 98). SA Golata testified that she recalled reviewing the addendum to the search warrant application, but that she could not recall what steps she took to comply with the addendum. (*Id*.).

Based on this testimony, and based on the "bigger picture" of the search warrant executed in this case, Defendant argues that the search warrant lacks particularity with respect to digital data on the cellphone. (*See* Dkt. 73 at 32, 35). The Court disagrees. First, SA Golata's testimony regarding compliance with the addendum was only that she could not recall what steps she took to comply with it. In other words, it is not clear from the hearing testimony that law enforcement disregarded the addendum. Rather, SA Golata testified that she was aware of the addendum and recalled reviewing it. Second, other than citing the *Garcia* decision, wherein the Second Circuit generally expressed that magistrate judges should craft anticipatory warrants to limit the scope of items to be searched to those which law enforcement have probable cause to believe are located on the premises (*see* Dkt. 73 at 36), Defendant cites no case law supporting the notion that any such addendum is required for searches of electronic devices. And third, even if such an addendum was required, there is no evidence before the Court indicating that SA Golata or any other law enforcement officer obtained information or evidence beyond what was contemplated by the warrant—such as evidence of other crimes outside of violations of 21 U.S.C. §§ 841(a)(1) and 863(a)(3).

B. <u>The Good Faith Exception</u>

Even if the warrant lacked probable cause and Defendant's Fourth Amendment rights were violated by law enforcement's search of the Samsung cellular telephone, the Court finds that the evidence would not be suppressed under the good faith exception recognized in *United States v. Leon.*

To that end, the exclusionary rule does not automatically operate to suppress the seized evidence. "Indeed, exclusion has always been our last resort, not our first impulse." *Rosa*, 626 F.3d at 64 (quoting *Herring v. United States*, 555 U.S. 135, 140 (2009)). There are four circumstances where an exception to the exclusionary rule would not apply and evidence obtained pursuant to a warrant lacking probable cause should be excluded:

> (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; [or] (4) where the warrant is so facially deficient that reliance upon it is unreasonable.

*Moore*, 968 F.2d at 222 (citing *Leon*, 468 U.S. at 923). "These exceptions reflect the general rule that, '[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.'" *United States v. Romain*, 678 F. App'x 23, 25 (2d Cir. 2017) (alteration in original) (quoting *Herring*, 555 U.S. at 144). "The pertinent analysis of deterrence and culpability is objective, and our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances." *Rosa*, 626 F.3d at 64 (quotations and citations omitted).

- 26 -

"'The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance' on an invalidated warrant." *United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011) (citations omitted).  Moreover, as counseled by the Second Circuit, in assessing whether the government has met its burden, a court must consider that "in *Leon*, the Supreme Court strongly signaled that most searches conducted pursuant to a warrant would likely fall within its protection." *Id.*  At oral argument, defense counsel acknowledged that the good faith exception was a high hurdle to overcome, and that he could point to no case law indicating that the good faith exception should not apply in a case such as this one.

Here, the Court concludes that a reasonably well-trained officer was justified in relying on the warrant, and would not have known that any search was illegal in light of all the circumstances.  First, as laid out in the warrant application, the search warrant was the product of an ongoing investigation into Defendant, who had been ordering packages to 269 Breck Street containing either pill press parts or die molds dating back to 2018—in other words, for years leading up to the execution of the warrant.  Given the ongoing investigation into Defendant and the delivery of contraband to 269 Breck Street, it was reasonable for law enforcement to rely upon the authorization in the warrant in searching the Samsung cellphone.

Further, Attachment B to the warrant application is titled, "Schedule of Items to be Seized and Searched," and under that heading, item 9 lists, "cellular telephones," among other items.  The law enforcement officers plainly complied with the warrant, which permitted them to seize *and* search the cellular telephones at 269 Breck Street.  In other

words, the search of the Samsung cellphone was clearly within the confines the warrant authorized by the Magistrate Judge, and the Magistrate Judge intended to authorize the search of cellphones seized from 269 Breck Street. *See, e.g., United States v. Moetamedi*, No. 92-CR-411, 1993 WL 147461, at *4 (N.D.N.Y. May 5, 1993) ("Although the warrant in the instant case may have been overbroad in that it authorized a search for drugs and drug paraphernalia other than the parcel to be delivered, the officers' reliance on the issuing judge's determination of probable cause was reasonable.   Therefore, the remedy of exclusion would be inappropriate based on the breadth of the warrant."), *aff'd*, 46 F.3d 225 (2d Cir. 1995).

Here, there is no indication from the record that any of the exceptions to the exclusory rule would apply, such as that the Magistrate Judge was knowingly misled, that the Magistrate Judge wholly abandoned his judicial role, that reliance upon the warrant was unreasonable, or that the warrant was so facially deficient that reliance upon it was unreasonable. *See, e.g., Upton*, 763 F. Supp. at 240 (finding that good faith exception to the exclusionary rule applied, including because the warrant "was [not] . . . 'so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.'").   For those reasons, even if the warrant was overbroad or not sufficiently particular as it pertained to the search of Defendant's Samsung cellphone, because the good faith exception applies, any evidence obtained from the Samsung cellphone should not be suppressed. Accordingly, the Court finds no reason to reverse the Magistrate Judge's R&R on this issue, and Defendant's objections are overruled.

IV.    **Suppression of Statements**

Defendant has also moved to suppress statements he made to law enforcement while he was in custody. (Dkt. 46-1 at 17). As explained above, the Magistrate Judge recommended that the Court deny Defendant's motion to suppress statements, and Defendant did not file any objections to that recommendation.

"The district court may adopt those portions of a report and recommendation to which no objections have been made, as long as no clear error is apparent from the face of the record." *United States v. Preston*, 635 F. Supp. 2d 267, 269 (W.D.N.Y. 2009). Having reviewed the record, the Court finds no error, clear or otherwise, in the Magistrate Judge's recommendation that the Court deny Defendant's motion to suppress statements. Accordingly, the Court adopts the Magistrate Judge's recommendation in this respect, and Defendant's motion to suppress statements is denied.

## CONCLUSION

For the foregoing reasons, the Court overrules Defendant's objections (Dkt. 73) to the Report and Recommendation (Dkt. 65) and adopts the Magistrate Judge's recommendations in their entirety. Defendant's motion to suppress (Dkt. 46) is denied.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:        October 30, 2025
              Rochester, New York